IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JOSE REMIGIO ZAPATA, an individual<br><br>        Plaintiff,<br><br>   v.<br><br>STATE OF MONTANA; CASCADE COUNTY; JESSE SLAUGHTER; PLANNED PARENTHOOD OF MONTANA, Inc. | CASE NO.  CV-21-79-GF-BMM-JTJ<br><br><br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW the Plaintiff Jose Remigio Zapata, through undersigned counsel, and for his Complaint, states as follows:

## I.    PARTIES

1.    During the time relevant to this Complaint, Jose Remigio Zapata (hereinafter "Mr. Zapata") resided at 205 11th Street South, Great Falls, Montana, 59405 and was a citizen of Montana.

2.    During the time relevant to this Complaint, Jesse Slaughter was the Sheriff of Cascade County. Jesse Slaughter, as Sheriff of Cascade County, is the chief administrator, law enforcement officer and ultimate policy maker for the Cascade County Sheriff's Office and the Cascade County Detention Center located at 3800 Ulm North Frontage Road, Great Falls, Montana 59404.

3.     On information and belief, as Sheriff, Jesse Slaughter serves as the final policymaker for policies that dictate the actions/inactions at the Cascade County Detention Center. Among those policies, is his "zero-tolerance" policy related to inmate medication diversion that staff at the Cascade County Detention Center and Planned Parenthood of Montana, Inc. dutifully perform. This "zero-tolerance" policy unilaterally, and without medical advice, terminates prescribed medication for the people that the Cascade County Detention Center serves in its care.

4.     On information and belief, Jesse Slaughter is a citizen of Montana and resides in Cascade County.

5.     Planned Parenthood of Montana, Inc. is a medical provider for the Cascade County Detention Center. Planned Parenthood's principal place of business is located at 1116 Grand Avenue, Suite 201, Billings, Montana 59102. Planned Parenthood of Montana, Inc. has a satellite office in Great Falls, Montana located at 211 9th Street South, Great Falls, Montana, 59405.

6.     The State of Montana.

7.     Cascade County, Montana, is a political subdivision of the State of Montana.

## II.    PROCEDURAL HISTORY

8.     On January 4, 2021, Plaintiff's counsel mailed Mr. Zapata's claims and

demand letters to Rina Fontana Moore, Clerk and Recorder for Cascade County and Montana's Department of Administration Montana pursuant to Mont. Code Ann. § 2-9-301(1) and (3).

9.      On February 9, 2021, The Board of Cascade County Commissioners formally denied Mr. Zapata's claim.

10.     The State of Montana failed to make a final disposition of Mr. Zapata's claims. Pursuant to Mont. Code Ann. § 2-9-301(2), Mr. Zapata considers the State's non-response as a final denial of his claim.

11.     Accordingly, Mr. Zapata files this Complaint in federal district court after fulfilling the mandates of Mont. Code Ann. § 2-9-301.

### III. VENUE and JURISDICTION

12.     This Court has federal question jurisdiction to hear the claims under 42 U.S.C. § 1983 pursuant to 28 USC § 1331, and civil rights jurisdiction pursuant to 28 U.S.C. § 1343(a)(1–4).

13.     This court has supplemental jurisdiction over accompanying the State law claims pursuant to 28 U.S.C. § 1367 as they arise from the same case or controversy as the federal question and civil rights claims and share a common nucleus of operative facts.

14.     Venue is proper in the United States District Court for the District of Montana Great Falls Division pursuant to 28 U.S.C. § 1391(b)(1) because Cascade

County is in this judicial district and all of the defendants are residents of the State of Montana.

15.     In the alternative, venue is proper in the United States District Court for the District of Montana Great Falls Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims herein occurred in this judicial district.

## IV.   FACTS COMMON TO ALL CLAIMS

16.     Plaintiff realleges and incorporates all prior paragraphs as if fully restated in this Section.

17.     Mr. Zapata has schizophrenia.

18.     Schizophrenia is widely recognized as a severe and chronic mental illness treated only by prescribed medications and therapy.

19.     According to the American Psychiatric Association, Schizophrenia affects how a person thinks, feels, and behaves and causes delusions, hallucinations, disorganized speech, trouble with thinking and motivation.

20.     According to the American Psychiatric Association, proper treatment of schizophrenia can greatly improve most symptoms.

21.     On or about January 7, 2019, the Cascade County Detention Center (hereinafter "CCDC") took Mr. Zapata under its care while the State prosecuted Mr. Zapata in Cause No. CDC-19-037 in the Montana Eighth Judicial District Court in

Cascade County.

22.    At all times relevant to this Complaint, Mr. Zapata was presumed

innocent until proven guilty beyond a reasonable doubt for every element of the

alleged charges against him.

23.    Sometime after January 7, 2019, but before January 20, 2019, the

Cascade County Detention Center (hereinafter "CCDC") and Planned Parenthood of

Montana Inc. (hereinafter "Planned Parenthood) knew Mr. Zapata had schizophrenia

and that he was prescribed the medication Risperidone to treat his schizophrenia.

24.    On January 14, 2019, the CCDC communicated with Mr. Zapata in

writing that it "will be weaning [Mr. Zapata] off Robaxin over the course of the next 2

weeks" because "this is not a medication that is used in this facility/setting." Robaxin

is a non-narcotic pain reliever and muscle relaxant that Mr. Zapata had been

prescribed.

25.    On January 19, 2019, Mr. Zapata communicated with the CCDC in

writing stating "I would like to request to speak to a psychiatrist due to the CCDC

discontinuing my anti-anxiety prescription due to it not being allowed for distribution

at this facility, which has adversely caused my anxiety to significantly increase at a

substantial rate as well as the return of 'voices' in my head which have risen to my

concern. Please help, and Thank you!"

26.    On January 20, 2019, staff at the CCDC and/or Planned Parenthood

discovered that Mr. Zapata diverted his prescribed medication Risperidone two times that evening.

27.     The CCDC and/or Planned Parenthood considered Mr. Zapata's actions to be diversion of his Risperidone when Mr. Zapata had kept the pills in his mouth after being told to take them.

28.     Risperidone is a prescription that helps treat schizophrenia.

29.     The CCDC and/or Planned Parenthood had no evidence or information that Mr. Zapata had diverted his Risperidone to provide it to another person at the CCDC.

30.     The CCDC and/or Planned Parenthood knew that Mr. Zapata's Risperidone prescription directed he take the medication at bedtime because they had possession of Mr. Zapata's "pill-fill" record from Walgreen's pharmacy and had information from Mr. Zapata's medical provider, Dr. Mozer.

31.     Despite knowing that Mr. Zapata's prescription and medical provider directed him to take his Risperidone at bedtime, the CCDC and/or Planned Parenthood, required Mr. Zapata to take his Risperidone at 7:00 p.m. when the CCDC and/or Planned Parenthood conducted its evening "pill pass." Mr. Zapata's bedtime was hours after the 7:00 p.m. "pill pass."

32.     Mr. Zapata did not immediately ingest his Risperidone at the 7:00 p.m. "pill pass" so that he could take his medication as prescribed by a medical doctor—at

bedtime.

33. Because Mr. Zapata held onto his Risperidone twice on January 20, 2019, to take at bedtime instead of 7:00 p.m., the CCDC and/or Planned Parenthood applied the CCDC's "zero-tolerance" policy for medication diversion.

34. The CCDC's "zero-tolerance" policy for medication diversion mandated that Mr. Zapata's Risperidone be completely and absolutely discontinued and otherwise terminated despite the testimony of Ms. Aurelia Thomas, during Mr. Zapata's bail hearing, that acknowledged that Mr. Zapata's schizophrenia is a serious psychiatric condition.

35. During the time relevant to this Complaint, Planned Parenthood employed Ms. Aurelia Thomas as a site officer for the Medical Department at the CCDC.

36. As of January 20, 2019, the CCDC and/or Planned Parenthood refused to provide Mr. Zapata with his prescribed Risperidone which treated his auditory hallucinations and other symptoms from his schizophrenia.

37. On information and belief, the CCDC and/or Planned Parenthood did not have a medical doctor's orders to discontinue Mr. Zapata's Risperidone. The CCDC and/or Planned Parenthood simply followed the CCDC's "zero-tolerance" policy for medication diversion and consulted their "medical provider" who determined that Mr. Zapata's other medications would suffice to treat his mental health issues despite Ms.

Aurelia Thomas admitting that those medications would not treat the auditory
hallucinations that Mr. Zapata suffered as a symptom of his schizophrenia.

38.     The CCDC and/or Planned Parenthood never permitted Mr. Zapata to
take Risperidone again after January 20, 2019.

39.     On information and belief, the CCDC and/or Planned Parenthood did not
provide an alternative medication to Risperidone or Robaxin to Mr. Zapata after the
CCDC and/or Planned Parenthood denied Mr. Zapata the ability to take those
medications.

40.     On January 23, 2019, Mr. Zapata communicated with the CCDC and/or
Planned Parenthood in writing that he "need[s] sleeping pills due to having very bad
dreams. I need them at 9:00 P.M. or later cause I can not take them any earlier then
that. I also need my anxiety pills due to the fact that I have severe anxiety and get very
nervous if I don't take them and have panic attacks. Can get med recs from Mark
Mosser @ St. Peters medical center in Helena if need them. Jose Zapata."

41.     On January 24, 2019, the CCDC responded "we do not give sleeping
pills or benzodiazepines (Ativan) in this facility. You recently diverted your Risperdal
(sic) and we will not be increasing your mental health doses or adding new
medications to treat mental health disorders at this time." In this same response, the
CCDC referred Mr. Zapata to an attached "sleep handout."

42.     A "sleep handout" is not an adequate replacement for anti-psychotic

medication.

43.     On February 6, 2019, Mr. Zapata communicated with the CCDC and/or Planned Parenthood in writing that he "would like to speak [with the mental health department] as medical has taken me off even more of my medications and my anxiety and & voices & nightmares are progressing & getting worse. Thank you."

44.     On February 19, 2019, after motion by Mr. Zapata, the Eighth Judicial District Court held a medical bail hearing to determine Mr. Zapata's bail amount.

45.     At that hearing, Mr. Zapata testified that he was having auditory hallucinations throughout the day and that his nightmares were getting worse.

46.     The Court ultimately denied Mr. Zapata's request to reduce his bail but raised the issue of Mr. Zapata's fitness to proceed and directed counsel to file a status report as to Mr. Zapata's fitness to proceed.

47.     On March 5, 2019, in response to Mr. Zapata's motion, the Montana Eighth Judicial District Court of Cascade County Ordered that Mr. Zapata undergo a mental health evaluation. In sum, the District Court ordered "The Montana State Hospital to conduct these evaluations without unnecessary delay…The Cascade County Sheriff's Office shall transport [Mr. Zapata] from the Cascade County Detention Center to the Montana State Hospital as soon as convenient…The pending criminal matters shall be suspended until the Court determines [Mr. Zapata's] fitness to proceed." Cause No. CDC-19-37, filed March 8, 2019, Order For Mental Health

Evaluation of Defendant and Order Sealing Defendant's Motion and Order

Suspending Proceedings is incorporated here by reference and attached as Exhibit A.

48.      The Montana State Hospital and the CCDC received a copy of Exhibit A

on or about March 5, 2019. Exhibit A.

49.      Mr. Zapata languished within the confines of the CCDC for another year

and seven (7) months.

50.      The State Hospital never evaluated Mr. Zapata.

51.      The Cascade County Sheriff never transported Mr. Zapata to the State

Hospital.

52.      On December 2, 2019, Mr. Zapata communicated with the CCDC and/or

Planned Parenthood in writing that he "putten two request to speak to you already I

have been having a really bad time and my voices, PTSD and anxiety are really really

messing with me. Plz come see me or pull me out…! I have not been thinking straight

– my voices are increasing more and more. Thank you.

53.      On December 5, 2019, the CCDC responded to Mr. Zapata's December

2, 2019, request by stating "will add to Paul's mental health list."

54.      Much later, on June 2, 2020, Mr. Zapata communicated with the CCDC

and/or Planned Parenthood in writing and stated "would like to see if I can be put

back on or get on something for my anxiety Plz. I've really been having a lot of

anxiety as well a few anxiety attacks. Plz help me get on something for it. Thank you.

55.     That same day, the CCDC responded "your kite has been given to our mental health provider to review. Mr. Zapata, please review the attached worksheets and practice these exercises daily, which may improve your anxiety."

56.     Despite Mr. Zapata's pleas for help, on information and belief, the CCDC and/or Planned Parenthood never provided Mr. Zapata with anything even remotely approaching appropriate medical care for an individual suffering from schizophrenia.

57.     After discontinuing Mr. Zapata's prescribed Risperidone and Robaxin and never providing an alternative medication, the CCDC placed Mr. Zapata in solitary confinement which isolated him for twenty-three (23) hours a day.

58.     On information and belief, the CCDC kept Mr. Zapata in solitary confinement from approximately June or July of 2019 to June or July of 2020.

59.     The CCDC left Mr. Zapata, a man who was and still is presumed innocent of the charges on which he was being held, and who they had stripped of the only medication that kept his mind tethered to reality, in solitary confinement with no care for close to a year.

60.     Sometime in September of 2020, Mr. Zapata contracted COVID-19 while in the CCDC and feared he would die from the disease. To this day, Mr. Zapata's lungs are still affected by the disease.

61.     Mr. Zapata was gang beaten by other inmates and had his ribs broken

during that gang beating while in the CCDC. The CCDC examined Mr. Zapata and confirmed Mr. Zapata had broken ribs and told him there was nothing the CCDC could do about it. The CCDC did nothing to treat Mr. Zapata's broken ribs after diagnosing him with the fractures.

62.     Mr. Zapata's mental health deteriorated to the point where he no longer understood why he was in the CCDC, how long he was there, or how to get out. Mr. Zapata was in no state to assist in his criminal defense and was otherwise rendered further incompetent due to the CCDC's and/or Planned Parenthood's actions and inactions.

63.     Mr. Zapata suffered from anxiety and panic attacks and only his cell mate assisted him despite the CCDC and Planned Parenthood knowing that Mr. Zapata was having these issues.

64.     It was not until October 2, 2020, after a motion filed by Mr. Zapata's defense counsel, that the District Court ordered the State's charges against Mr. Zapata dismissed with prejudice because of the State's "non-remedial breach of [Mr. Zapata's] fundamental constitutional rights" reasoning "…pretrial detainees like Mr. Zapata have a substantive due process interest in receiving reasonably prompt professional evaluation of their fitness to proceed." Cause No. CDC-19-037, filed October 2, 2020, Dismissal Order is incorporated here by reference and attached as Exhibit B.

65.     The District Court determined "[t]his train wreck lies at the feet of the State Hospital…" and "[Mr. Zapata] is presumed innocent and he has spent the last year and seven months waiting in jail for the State Hospital to comply with this Court's order." Exhibit B, 2–3.

66.     By the time Mr. Zapata was released, the only medication the CCDC and/or Planned Parenthood was providing Mr. Zapata was a medication for heartburn.

67.     On information and belief, the State of Montana has demonstrated a consistent pattern of intentionally disregarding court orders that require the Montana State Hospital to conduct timely mental health evaluations of the accused to determine their fitness to proceed. Mr. Zapata is only one of many that has had his rights violated by the State of Montana related to timely mental health evaluations.

68.     On information and belief, Planned Parenthood and/or the CCDC has demonstrated a consistent pattern of intentionally terminating prescribed medications for those people in their care at the CCDC by implementing and following their "zero-tolerance" policy for pill diversion.

69.     But for Mr. Zapata's defense counsel and the District Court's intervention, Mr. Zapata would not have been released from the CCDC.

**Violation of Clearly Established Rights**

70.     Planned Parenthood and/or CCDC violated Mr. Zapata's fundamental

constitutional right of access to care, the right to be treated for his serious mental health condition that was ordered by a medical doctor, and the right to professional medical judgment while under the care of Planned Parenthood and the CCDC. The CCDC mandated a "zero-tolerance" policy for medication diversion that stripped medical providers of their professional judgment and terminated Mr. Zapata's prescribed medications to treat his schizophrenia—a serious mental health illness.

71.     The Cascade County Sheriff, the CCDC and/or Planned Parenthood violated Mr. Zapata's fundamental constitutional rights when the Cascade County Sheriff and the CCDC implemented a "zero-tolerance" policy that they mandated Planned Parenthood to follow. Planned Parenthood, consequently, failed to exercise reasonable and necessary independent medical judgment and acted with deliberate indifference to Mr. Zapata's serious medical needs. The Cascade County Sheriff and the CCDC stripped Planned Parenthood of exercising their own medical judgment and its own policy establishes deliberate indifference to Mr. Zapata's serious medical needs. In the alternative, Planned Parenthood's decisions, if any, to terminate Mr. Zapata's prescriptions to treat his schizophrenia were extreme and abusive and were decisions made completely outside of the range of professional medical judgment.

72.     The State of Montana and the CCDC violated Mr. Zapata's due process rights under the Fourteenth Amendment to the United States Constitution when both failed to timely comply with the District Court's March 5, 2019, order that directed

that Mr. Zapata undergo a mental health evaluation at the Montana State Hospital.

## Count 1 – Violation of Mr. Zapata's Fourteenth Amendment Rights—42 U.S.C. § 1983

73.      Plaintiff realleges and incorporates all other paragraphs here as if fully restated in this Claim for Relief.

74.      At all times relevant hereto, Planned Parenthood, CCDC, Jesse Slaughter, Cascade County, and the State of Montana were acting under color of state law.

75.      At all times relevant hereto, Mr. Zapata had rights clearly established under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

76.      Jesse Slaughter is employed by Cascade County as the Sheriff for Cascade County, and he is the ultimate policy maker for the CCDC. Jesse Slaughter, acting within his course and scope of employment with Cascade County, implemented and/or enforced the "zero-tolerance" policy that terminated Mr. Zapata's prescribed medications while at the CCDC.

77.      Jesse Slaughter as the Sheriff for Cascade County, the CCDC and the State of Montana violated Mr. Zapata's Fourteenth Amendment Rights when they failed to timely comply with the Court's March 5, 2019, order that directed Mr. Zapata undergo a mental health evaluation at the Montana State Hospital.

78.     Mr. Zapata suffered damages as a result of these actions through deprivation of his constitutionally protected rights as well as emotional distress, physical injury and pain and suffering that was a reasonably foreseeable consequence of the Defendant's actions and inactions.

79.     Jesse Slaughter acted with actual malice as defined by Mont. Code. Ann. § 27-1-221 when he implemented and/or enforced the "zero-tolerance" policy that terminated Mr. Zapata's prescribed medications needed for his serious mental health illness.  Mr. Zapata suffered damages as a result of these actions through deprivation of his constitutionally protected rights as well as emotional distress, discomfort, and annoyance.

## Count 2 – Violation of Article II Section 4 of the Montana State Constitution - Right to have Individual Dignity.

80.     Plaintiff realleges and incorporates all other paragraphs here as if fully restated in this Claim for Relief.

81.     At all times relevant hereto Mr. Zapata had rights clearly established under Article II Section 4 of the Montana State Constitution.

82.     Jesse Slaughter Cascade County Sheriff, the CCDC, Planned Parenthood and the State of Montana stripped Mr. Zapata of his dignity when they denied him medical care and failed to comply with the Court's March 5, 2019, court order. The CCDC then kept Mr. Zapata until October 2, 2020, when the District Court intervened

and declared that the State of Montana had violated Mr. Zapata's substantive due process rights for failing to timely provide him with a court ordered mental health evaluation to determine his fitness to proceed.

83.     The CCDC and/or Planned Parenthood, complying with Jesse Slaughter's "zero-tolerance" policy, terminated Mr. Zapata's prescribed medications that treated his schizophrenia. Shortly thereafter, and despite the March 5, 2019, Court Order that ordered Mr. Zapata to undergo a mental health evaluation because his fitness to proceed was questioned, the CCDC placed Mr. Zapata in solitary confinement for an extended period of time that isolated Mr. Zapata from all other human contact for twenty-three (23) hours a day.

84.     The CCDC and/or Planned Parenthood knew Mr. Zapata had schizophrenia but eliminated his access to the very medication that treated the auditory hallucinations that Mr. Zapata suffered from as a symptom of his schizophrenia.

85.     Mr. Zapata repeatedly requested medical care to treat his anxiety, panic attacks and auditory hallucination but the CCDC and/or Planned Parenthood failed to provide sufficient medical care to Mr. Zapata while he was in their care for a year and seven (7) months.

86.     Mr. Zapata's damages are extensive as he lost a year and seven (7) months of his life to despair and unmedicated hallucinations, confusion, and sleep

deprivation.

87.     The CCDC and/or Planned Parenthood's actions, following Jesse

Slaughter's and Cascade County's policies, stripped Mr. Zapata of medical care and

denied him equal protection of the law.

## Count 3 – Violation of Article II Section 17 of the Montana Constitution – Due Process of Law

88.     Plaintiff realleges and incorporates all other paragraphs here as if

fully restated in this Claim for Relief.

89.     At all times relevant hereto Mr. Zapata had a clearly established right to

due process under Article II, Section 17 of the Montana Constitution.

90.     Jesse Slaughter's "zero-tolerance policy" for pill diversion that the staff

at the CCDC and/or Planned Parenthood followed, amounts to arbitrary

governmental action that violated Mr. Zapata's substantive due process rights to

access to medical care.

91.     The State of Montana's failure to complete a timely mental health

evaluation of Mr. Zapata to determine his fitness to proceed is but one example of the

continued and intentional failure by the State of Montana to provide timely mental

health evaluations ordered by Montana courts. The State of Montana's failure to

timely evaluate Mr. Zapata, based on its established course of performance of not

following Court orders and otherwise disregarding any reasonable timeline to

conduct mental health evaluations, amounts to arbitrary government action. The State of Montana oppressed Mr. Zapata as he stayed in the CCDC for a year and seven (7) months awaiting the March 5, 2019, Court ordered mental health evaluation.

92.      Mr. Zapata suffered damages as a result of his substantive due process rights violations as he sat incarcerated for a year and seven (7) months, much of that time in solitary confinement, for the sole reason that he was awaiting his long-standing *Court Ordered* mental health evaluation that the State of Montana failed to ever conduct because of its own internal policies and long-standing deliberate and intentional disregard of District Court orders for timely mental health evaluations for people like Mr. Zapata.

## Count 4 – Negligent and Intentional Infliction of Emotional Distress

93.      Plaintiff realleges and incorporates all other paragraphs here as if fully restated in this Claim for Relief.

94.      Mr. Zapata suffered severe and serious emotional distress as a result of his prolonged incarceration at the CCDC and while awaiting his mental health evaluation at the Montana State Hospital.

95.      Jesse Slaughter as the Cascade County Sheriff, the CCDC's, Planned Parenthood's and the State of Montana's extreme and outrageous conduct intentionally, recklessly, and/or negligently caused Mr. Zapata's emotional distress and resulting bodily injury.

96.     Mr. Zapata cannot go a day without thinking about the torment he suffered while in the custody of the CCDC.

97.     The serious and severe emotional distress suffered by Mr. Zapata was a reasonably foreseeable consequence of Defendant's actions and inactions while Mr. Zapata was in the care of the CCDC.

### COUNT 5 – Negligence

98.     Plaintiff realleges and incorporates all other paragraphs here as if fully restated in this this Claim for Relief.

99.     Defendants had a duty to exercise reasonable care.

100.    Defendants and their agents did not exercise the level of care that a reasonable and prudent person would under the same circumstances and the damages Mr. Zapata sustained due to that lack of care were reasonably foreseeable.

101.    Defendants' actions damaged Mr. Zapata and caused him severe emotional distress, physical pain, injury, and suffering.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for damages, relief and judgment against the Defendants to be proved at a jury trial as follows:

1.    Compensatory damages to be proven at the time of trial, including but not limited to the reasonable costs of medical care and psychological care;

2.    For physical pain and suffering;

3.      For emotional distress;

4.      For loss of enjoyment of life;

5.      For punitive damages against Jesse Slaughter;

6.      For costs of suit and attorney's fees (copy of Fee Agreements attached as Exhibit C);

7.      For declaratory judgment that Defendants' policies, practices and actions as alleged in this complaint violated Plaintiffs' rights under the United States and Montana State Constitutions;

8.      For such other relief as the Court deems just and proper.

        DATED this 21st day of June, 2021.

                        KRIS A. MCLEAN LAW FIRM, PLLC

                        /s/ Tyson A. McLean
                        Tyson A. McLean
                        Attorney for Plaintiff

**JURY DEMAND**

Plaintiff requests a jury trial of all matters appropriately tried to a jury.

        DATED this 21st day of June, 2021.

                        KRIS A. MCLEAN LAW FIRM, PLLC

                        /s/ Tyson A. McLean
                        Tyson A. McLean
                        Attorney for Plaintiff