## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

|  |  |
|---|---|
| STATE OF MONTANA, ET AL., | **CV-21-79-GF-BMM** |
| Plaintiff, | |
| vs. | **ORDER** |
| JOSE REMIGIO ZAPATA, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Jose Remigio Zapata ("Zapata") has sued the State of Montana (the "State"), several state employees (collectively "State Defendants"), Cascade County, several county employees, and Planned Parenthood of Montana, alleging violations of his state and federal constitutional rights as well as asserting a state law negligence claim. (Doc. 1); (Doc. 41.) Only Zapata's claims against the State and its employees remain. (Doc. 96.)

Zapata has filed a Motion for Partial Summary Judgment, arguing that the Court should grant judgment on the issue of State Defendants' liability under 42 U.S.C. 1983 for a Fourteenth Amendment violation and on the issue of State Defendants' liability under Article II, Section 17 of the Montana Constitution for a state due process violation. (Doc. 54 at 27, 32.) Zapata also contends that the Court

1

should determine, as a matter of law, that the Fourteenth Amendment does not permit pretrial detainees to wait longer than fourteen days for a mental health evaluation. (Doc. 54 at 33-34.)

The State has filed a Motion for Summary Judgment asking the Court to dismiss all but Zapata's negligence claim. (Doc. 57.) The State argued that judicial immunity and qualified immunity shield the State Defendants from all of Zapata's claims. (Doc. 58 at 9-11.) The State also argues that Zapata's claim alleging a violation of Article II, Section 4 of the Montana Constitution should fail because Zapata did not first pursue his remedies under the Montana Human Rights Act. (Doc. 58 at 16-18.)  The State also argues that Zapata's negligence claim provides an adequate remedy to the alleged state constitutional violations. (Doc. 58 at 19.)

Both Zapata and the State Defendants also have filed several motions in limine. (Doc. 73); (Doc. 76.) The Court has scheduled trial in this matter for May 15, 2023. (Doc. 78.)

## BACKGROUND

Zapata suffers from several diagnosed and documented serious mental health conditions, including bi-polar disorder, schizophrenia, anxiety, depression, and post-traumatic stress disorder. (Doc. 54 at 10.) Zapata's symptoms include auditory hallucinations. (*Id.*) Zapata, while in pretrial detention for a criminal charge in Montana state district court, waited for one year and seven months to receive a

state court-ordered competency evaluation to assess his fitness to proceed to trial. (Doc. 41-2.) Zapata remained housed at the Cascade County Detention Center during this time, where he suffered extended periods in isolated lockdown without mental health treatment, because the Montana State Hospital ("MSH") failed to complete the evaluation that the Montana state district court had ordered. (*Id.* at 3); (Doc. 54 at 11.) The Montana District Court for the Eighth Judicial District dismissed Zapata's criminal case with prejudice after finding that this extended delay constituted an irremediable violation of Zapata's due process rights. (Doc. 41-2.)

State Defendant Fouts works as the Hospital Administrator for the Montana State Hospital, and State Defendant Gray works as the Medical Director for the Montana State Hospital. (Doc. 41 at ¶¶ 10, 12.) Zapata asserts that Fouts, as chief administrator, and Gray, as the medical director, both functioned as policy makers for the hospital. (*Id.*) State Defendant Hill worked as a psychiatrist with the Montana State Hospital. (*Id.* at ¶ 11.) Zapata asserts that Hill possessed decision making authority regarding whom the Montana State Hospital Forensic Mental Health Unit would admit for court ordered mental health evaluations. (*Id.*) State Defendant Orrino works as the Montana State Hospital Forensic Mental Health Facility Social Worker. Zapata asserts that her responsibilities included, among others, coordinating

with community court and legal systems to admit people for mental health evaluations. (*Id.* at ¶¶ 14-15.)

## DISCUSSION

The Court will grant summary judgment when the moving party demonstrates both an absence of material fact issues and their entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of establishing the basis for their motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The summary judgment inquiry requires examining the evidence in the light most favorable to the nonmovant. Once the movant has met this initial burden, however, the party opposing the motion "may not rest upon the mere allegations or denials of [his] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

*Section 1983 liability*

Section 1983 of Title 42 of the United States Code holds state actors liable for conduct that deprives a plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981). A deprivation of a constitutional right within the meaning of 42 U.S.C.

§ 1983 requires showing that a defendant "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir.1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

State officials may be sued under § 1983 in their individual capacities for damages. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Officials may be liable under § 1983 only when they personally participate in the alleged rights deprivation. *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir.2010). A plaintiff must establish causation to "demonstrate that the defendant's conduct was the actionable cause of the claimed injury." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

## I.    Zapata's Motion for Partial Summary Judgment

Zapata asks the Court to grant partial summary judgment on two issues: 1) the State Defendants' liability for the alleged violation of his Fourteenth Amendment right to a timely competency evaluation; and 2) relatedly, the State Defendants' liability for the alleged violation of his right to due process established in Article II, Section 17 of the Montana constitution. (Doc. 54.) Zapata also asks the Court, should it grant summary judgment on these issues, to determine that the violation occurred

on the fifteenth day of his detention at the Cascade County Detention Center. (*Id.* at 32.)

### The alleged violation of the Fourteenth Amendment

Zapata argues that the Court should grant summary judgment on the elements of the State Defendants' liability for his 42 U.S.C. § 1983 claim: 1) the existence of his Fourteenth Amendment right to a timely mental health evaluation; and 2) the State Defendants' violation of it. (*Id.* at 14, 21-27.) A claim brought pursuant to § 1983 requires showing a constitutional deprivation caused while the defendants acted under color of law. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir.1988). The Ninth Circuit has described this deprivation as "an affirmative act, participat[ion] in another's affirmative acts, or omi[ssions] to perform an act . . . legally required to do that causes the deprivation of which [the plaintiff complains]." *Id.* (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

The Court analyzes questions regarding the pretrial criminal detainees under the due process clause of the Fourteenth Amendment. *Or. Advocacy Ctr. v. Mink,* 322 F.3d 1101, 1120 (9th Cir. 2003). Zapata correctly notes that pretrial detainees possess a due process right to receive timely pretrial competency evaluations to assess their fitness to proceed to trial. (Doc. 54 at 6-7) (citing *Trueblood v. Washington State Dep't of Soc. and Health Servs.*, 822 F.3d 1037, 1043 (9th Cir. 2016)). The Court recognizes that the extended imprisonment of pretrial

detainees, when they have been ordered to receive such services, may violate the Constitution. *See Foucha v. Louisiana*, 504 U.S. 71, 77, (1992). A review of the cases cited by Zapata does not indicate, however, that a state's violation of a pretrial detainee's right to an evaluation necessarily entitles Zapata to summary judgment on each element of his 42 U.S.C. § 1983 claim against the individual State Defendants.

To prevail on his § 1983 claim against the State Defendants, Zapata likely will have to prove several elements: 1) the State Defendants made an intentional decision regarding Zapata's competency evaluation; 2) the State Defendants' decisions regarding the evaluation put Zapata at substantial risk of suffering serious harm; 3) the State Defendants did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable official under the circumstances would have understood the high degree of risk involved, thereby making the consequences of the defendant's conduct obvious; and 4) the State Defendants caused Zapata's injuries by not taking such measures. *See, e.g.*, *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). The third element requires Zapata to show that the State Defendants' conduct proved objectively unreasonable. *See id.*

Even if the Court accepts that a constitutional violation occurred as a result of Zapata's 577 day wait for a competency evaluation, and that each State Defendant acted under color of law, Zapata has not yet demonstrated the absence of material

fact questions as to each element of a § 1983 claim for each State Defendant. Zapata has offered no undisputed facts to show that Orrino and Hill, the employees managing admissions to the Montana State Hospital, for example, made intentional decisions specifically regarding Zapata's admission or that they failed to take reasonable measures to abate the risk specifically to Zapata and his experience of this constitutional harm. Policymaker liability requires Zapata to show that Fouts and Gray, the two Montana State Hospital administrators, "with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm." *See, e.g.*, *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Zapata has not demonstrated an absence of genuine issues of fact regarding these State Defendants' objective, deliberate indifference.

Zapata also discusses evidence regarding the backlog and resource constraints that the Montana State Hospital faced at the time relevant to his case. (Doc. 54 at 8-11.) Resource availability, though not an absolute defense, remains quite relevant to the defense against his claims. *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Questions regarding a resource availability defense likely represent the type of fact-intensive inquiries generally left to the jury. *See id.* Zapata has failed to demonstrate the absence of fact questions regarding the resources available at the time of his detention.

8

Zapata also has failed to demonstrate an absence of material facts regarding the injury he suffered. Zapata asserts that he suffered injuries when he remained in jail longer than he otherwise would have had he received a competency evaluation. (*See e.g.*, Doc. 41 at ¶ 119.) State Defendants actively dispute that Zapata has suffered any injury at all. State Defendants contend that the delay in the competency evaluation resulted in a "windfall" for Zapata, in that the delay allowed Zapata to avoid criminal liability for a serious state-level offense. (Doc. 91 at 7-8)

These factual disputes require resolution before a jury, not the Court. The Court will deny summary judgment on Zapata's § 1983 claim for these reasons.

**The alleged violation of Article II, Section 17 of the Montana constitution**

Zapata next argues that the Court should grant summary judgment on his claim based on Article II, Section 17 of the Montana constitution. (Doc. 54 at 27-32.) Zapata correctly identifies that the rights protected by Article II, Section 17 are self-executing and allow for damages. (*Id.* at 28); *Dorwart v. Caraway*, 58 P.3d 128, 136-37 (Mont. 2002). Zapata also correctly contends that the violation of his due process rights under the Fourteenth Amendment would constitute a violation of his due process rights under Article II, Section 17. (Doc. 54 at 28.)

As with his Fourteenth Amendment arguments, however, Zapata still must demonstrate the absence of any material facts as to each element of an Article II, Section 17 claim. Zapata has identified that he must prove two elements to prevail

on his claim: 1) prison officials subjected him to the substantial risk of serious harm to his health or safety; and 2) the officials "acted with deliberate indifference to the inmate's health and safety through a conscious disregard of that risk." (Doc. 88 at 27) (citing *Disability Rights Montana v. Montana Judicial Districts 1-22*, 2020 WL 1867123 (Mont. Apr. 14, 2020)). Zapata has failed to demonstrate the absence of disputed facts regarding these elements. There remain, again at minimum, questions for a jury whether each State Defendant consciously disregarded the alleged risk to Zapata's health and safely and whether Zapata suffered any injury as a result of his wait for an evaluation. The Court will not grant Zapata summary judgment on his Article II, Section 17 claim.

The Court need not determine whether a violation of Zapata's constitutional rights occurred after fourteen days of waiting for his competency evaluation. The length of the delay remains relevant to a jury's assessment of liability and damages. The Court declines to grant summary judgment on this issue.

## II.    The State's Motion for Partial Summary Judgment

State Defendants seek summary judgment on four issues: 1) judicial immunity shields State Defendants from Zapata's suit; 2) qualified immunity shields State Defendants from Zapata's suit; 3) the Montana Human Rights Act ("MHRA") requires Zapata to exhaust his remedies under the Act before pursuing his claim under Article II, Section 4 of the Montana constitution (Zapata has not filed an

MHRA claim); and 4) Zapata's negligence claim provides an adequate alternate remedy for his alleged violation of Article II, Section 17 of the Montana Constitution. (Doc. 58.)

**Judicial immunity**

State Defendants claim that judicial or quasi-judicial immunity shields them from Zapata's claims. (*Id.* at 9.) State Defendants contend that Zapata's central theory of liability concerns their alleged failure to follow an order of a Montana state district court that required Zapata's competency evaluation. (*Id.*) They argue that their actions or inactions related to Zapata's uninitiated competency evaluation constituted acts committed in performance of an integral part of the judicial process. (*Id.* at 10.) They liken their conduct to that of a psychiatrist preparing and submitting court-ordered medical reports that contain false information. (*Id.*) State Defendants misapprehend the application of judicial or quasi-judicial immunity to their actions.

 "It is well established that state judges are entitled to absolute immunity for their judicial acts." *Swift v. State of California,* 384 F.3d 1184, 1188 (9th Cir.2004) (citing *Pierson v. Ray,* 386 U.S. 547, 553-554 (1967). Judicial immunity may extend to other officials only if their "judgments are 'functional[ly] comparab[le]' to those of judges-that is, because they, too, 'exercise a discretionary judgment' as part of their function." *Id.* (quoting *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 436 (1993)). This extension of judicial immunity applies to

officials    carrying    out    functions    "essential    to    the    judicial    process."
*Burkes v. Callion*, 433 F.2d 318 (9th Cir. 1970) cert. denied, 403 U.S. 908, (1971).

None of the State Defendants evaluated Zapata. None of the State Defendants prepared or submitted medical reports. None of the State Defendants exercised their discretion and judgment to compile the information the state district court order sought: a psychiatric evaluation and resulting judgment regarding Zapata's competency to proceed to trial. The act of having conducted the competency evaluation would represent the relevant "function essential to the judicial process" in this case. *Id.* State Defendants did not perform as individual social workers, doctors, or other health care providers conducting competency evaluations. They instead managed the bureaucracy of the Montana State Hospital. The administration of a state facility does not involve exercising judgments "functionally comparable" to those of district court judges. State Defendants enjoy no judicial immunity for this reason.

**Qualified immunity**

Qualified immunity remains available to government actors performing discretionary functions even if performance of those functions deprives a plaintiff of a constitutional right. Qualified immunity shields these actors from lawsuits for damages if a reasonable official could have believed their conduct was lawful, in light of clearly established law and the information possessed by the official.

*Anderson v. Creighton*, 483 U.S. 635, 637-39, 641 (1987); s*ee also KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9th Cir. 2008) (citing *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

The Court considers two factors when determining whether qualified immunity exists in a given case: 1) whether the plaintiff alleged a constitutional violation; and 2) if so, whether the right was clearly established at the time of the alleged misconduct. *Pearson V. Callahan*, 555 U.S. 223, 232 (2009). "Clearly established" means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

State Defendants do not dispute that Zapata likely has survived the first hurdle of the qualified immunity test: the facts, viewed in the light most favorable to Zapata, establish a Fourteenth Amendment due process violation. (Doc. 58 at 16); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). State Defendants instead argue that the law governing Zapata's Fourteenth Amendment due process rights did not prove clearly established at the time of the alleged constitutional violation. (Doc. 58 at 16.)

The central question before the Court involved whether a reasonable official could have concluded that the act in question, failing to complete Zapata's competency evaluation for 577 days, was lawful. *See Anderson*, 483 U.S. at 637-39, 641. State Defendants would be entitled to summary judgment on the question of

qualified immunity if reasonable doubt exists about the legality of this conduct based on the undisputed facts. *Id.* The Court determines that no reasonable official would conclude that the circumstances of Zapata's pretrial detention were lawful. State Defendants cannot benefit from qualified immunity.

The Court does not require adjudication of an identical case before determining the law clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Ninth Circuit in *Trueblood v. Washington State Dep't of Soc. & Health Servs.*, 822 F.3d 1037, 1042-46 (9th Cir. 2016), established that there must exist a reasonable relationship between a court's order that a pretrial detainee receive a competency evaluation and the length of time until the inception of that evaluation.

The Ninth Circuit in *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1121-22 (9th Cir. 2003), also determined that a state hospital's refusal to admit incapacitated criminal pretrial detainees in a timely manner violated the Fourteenth Amendment. Leaving "incapacitated criminal defendants in jail for weeks or months violates their due process rights because the nature and duration of their incarceration bear no reasonable relation to the evaluative and restorative purposes for which the courts commit those individuals." *Id.* at 1122. The incapacitated

pretrial detainees in Oregon in *Mink* "spent on average about one month in county jail [and up to] two, three or even five months." *Id.* at 1106.

The Court, in its discussion of Ninth Circuit caselaw, notes that State Defendants appear to contend incorrectly that the Washington statutory scheme the Ninth Circuit addressed in *Trueblood* differs significantly from the Montana law governing competency evaluations: "It is undisputed the Montana statutes regarding fitness evaluations are different than those at issue in *Trueblood* . . . the Washington [] statutes . . . permitted and mandated only the state conduct competency evaluations." (Doc. 100 at 7.) Montana law, State Defendants contend, allows entities and providers other than the state to conduct evaluations. (*Id.*) *Trueblood* describes the Washington evaluation procedure, however, as requiring an "interview . . . which can occur in one of three settings: a jail, a state hospital, or in the community. *Trueblood v. Washington State Dep't of Soc. & Health Servs.*, 822 F.3d 1037, 1040 (9th Cir. 2016). The Ninth Circuit also explained that "[n]early ninety percent of [the state of Washington's] evaluations occur in a jail or community setting." *Id.* This language suggests that the constitutionally objectionable evaluation practices in *Trueblood* prove more similar to Montana's than State Defendants allow.

*Mink* and *Trueblood* relied upon the constitutional framework established by the United States Supreme Court in 1972 and clarified a decade later. The United

States Supreme Court in *Jackson v. Indiana,* 406 U.S. 715 (1972), established a reasonableness standard to limit incompetent pretrial detainees' incarceration and requiring, at minimum, "that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." The United States Supreme Court in 1982 also explained that "[w]hether the substantive due process rights of incapacitated criminal defendants have been violated must be determined by balancing their liberty interests in freedom from incarceration and in restorative treatment against the legitimate interests of the state." *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982). The *Mink* and *Trueblood* decisions have established that unreasonable delays by state hospitals, both for conducting competency evaluations and admitting incompetent pretrial detainees, may constitute a constitutional violation. *Trueblood*, 822 F.3d at 1042-46; *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1121-22 (9th Cir. 2003). They also highlight constitutional requirements identified by the United States Supreme Court more than forty years ago.

"[T]he relevant question under the clearly established prong [of the qualified immunity test] is whether defendants had notice that their *conduct* was unlawful in the situation they confronted." *Sandoval v. County of San Diego*, 985 F.3d 657, 676 (9th Cir. 2021). *Trueblood* and *Mink* have regulated state hospitals' provision of competency evaluations and commitments for more than half a decade. Evidence

16

before the Court also indicates that State Defendants understood the constitutional constraints the Ninth Circuit articulated in *Trueblood*: Hill, Orrino, and Fouts have admitted knowing of the *Trueblood* decision since 2016. (Doc. 54 at 23.) Several State Defendants have admitted they understood that failure to admit people in a timely manner could create a problem for the Montana State Hospital and voiced concerns regarding the hospital's waitlist. (*Id.* at 22-23.) This evidence, in addition to the Ninth Circuit's clear guidance on this issue in *Mink* and *Trueblood*, suggests to the Court that the law on this issue had been clearly established at the time of Zapata's alleged constitutional violations. State Defendants will enjoy no qualified immunity from Zapata's constitutional claims for these reasons. *Anderson v. Creighton*, 483 U.S. 635, 637-39, 641 (1987).

### Exhaustion of remedies under the Montana Human Rights Act

State Defendants incorrectly refer to the exhaustion requirement of the Montana Human Rights Act ("MHRA") as it relates to discrimination claims, as opposed to individual dignity claims, under Article II, Section 4 of the Montana constitution. (Doc. 58 at 17-18.) Zapata need not pursue and exhaust his remedies with the Human Rights Commission before bringing this suit. The Montana supreme court has recognized that incarcerated people may allege violations of their Article II, Section 4 individual dignity rights. *Walker v. State,* 68 P.3d 872 (Mont. 2003).

The Montana supreme court in *Walker* described the circumstances that would implicate an incarcerated person's individual dignity rights. *Id. Walker* determined that the application of the state constitutional right to dignity along with the proscription against cruel and unusual punishment provides "citizens greater protections from cruel and unusual punishment than does the federal constitution." *Id.* The court stated, however, that, "in certain instances where Montana's constitutional right to individual dignity is also specially implicated, [the court] would of necessity, consider and address the effect of that constitutional mandate." *Id.* at 874.

The Montana supreme court later established a test to evaluate whether the denial of medical care to incarcerated people violates their state constitutional right to individual dignity: "an inmate must make an evidentiary showing (1) that prison officials or conditions subjected the inmate to a substantial risk of serious harm to the inmate's health or safety and (2) that prison officials 'acted with deliberate indifference to the inmate's health and safety" through a conscious disregard of that risk.'" *Disability Rts. Montana v. Montana Jud. Districts 1-22*, 2020 WL 1867123, at *3 (Mont. Apr. 14, 2020) (citing *Walker*, 68 P.2d 872).

*Disability Rights Montana* and its predecessor *Walker* establish an independent cause of action for alleged violations of the Article II, section 4 right to individual dignity. Zapata need not have exhausted his remedies available under the

Montana Human Rights Act before bringing this claim. The Court will deny State Defendants summary judgment on this issue.

### Zapata's negligence claim

State Defendants argue that Zapata's Montana constitutional claims should fail because his negligence claim provides an adequate remedy. (Doc. 58 at 17.) State Defendants argue that a plaintiff cannot assert a constitutional claim where "adequate remedies exist under statutory or common law." *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 165 P.3d 1079 (Mont. 2007); *see also Estate of Frazier v. Miller*, 484 P.3d 912 (Mont. 2021). If "plaintiffs [can] vindicate their rights through an alternate remedy, a constitutional remedy need not be employed." *Est. of Frazier*, 484 P.3d at 922.

Zapata bears the burden of proving "how common law or statutory remedies would not adequately address any potential damages." *Tally Bissell Neighbors, Inc. v. Eyrie Shotgun Ranch, Ltd. Liab. Co.*, 228 P.3d 1134 (Mont. 2010). The availability of an alternative remedy, rather than the ultimate success on the merits, precludes a distinct constitutional cause of action. *Id.* The Montana supreme court previously has determined that a negligence claim may constitute an adequate alternate remedy in certain cases concerning due process, unreasonable search and seizure, and privacy constitutional injuries. The Montana supreme court has reached this conclusion when a "negligence claim . . . essentially encompasse[s] the same

standards a jury would use in consideration of the . . . proffered constitutional tort claim." *Est. of Frazier*, 484 P.3d at 922. The Montana supreme court evaluated the adequacy of the negligence claim by assessing whether a trial court permitted the plaintiff to present constitutional arguments, evidence, and jury instructions regarding the constitutional duty of care owed by a state actor. *Id.*

Zapata's negligence claim could encompass the standards necessary to prove his state constitutional claims. Zapata has offered no evidence to show that his negligence claims would not address adequately his alleged state constitutional injuries. The Court will follow the Montana supreme court's reasoning in *Frazier* and determine that Zapata's negligence claim constitutes an adequate alternative remedy to the asserted state constitutional claims. The Court declines to reach the state constitutional questions Zapata has raised and will grant summary judgment to State Defendants on this issue.

## III. The parties' Motions in Limine

The parties have filed several motions in limine asking the Court for preliminary rulings on the scope of expert witness testimony, the exclusion of certain witnesses, and the exclusion of certain evidence. (Doc. 73); (Doc. 76).

Motions in limine allow parties to obtain a preliminary ruling on the admissibility of evidence. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Courts possess inherent authority to manage the course of trials, and decisions

to admit or exclude evidence fall within the sound discretion of the trial court. *See, e.g.*, *United States v. Blitz*, 151 F.3d 1002, 1007 (9th Cir. 1998). Additionally, "*in limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

The Court engaged in an extended discussion with the parties regarding their motions in limine at during the February 13, 2023 hearing. (Doc. 109.) The Court allowed the parties to argue regarding the scope and relevance of their respective expert witnesses' anticipated testimony. The parties also offered argument regarding Zapata's prior criminal history, the charges he faced in the underlying Montana state court criminal matter, his invocation of his Fifth Amendment rights during discovery in this case, as well as his medical conditions. The Court explained its concerns regarding the potential for unfair prejudice that this evidence could present. The Court also explained that some evidence regarding Zapata's past criminal conduct or charges may prove relevant to the causation and injury questions the jury will consider. The Court deems it prudent to refrain from evaluating this anticipated testimony until it has clearer view of the parties' theory of the case and the evidence to be presented to the jury. The Court will defer its ruling on the parties' in limine motions until the time of trial.

**CONCLUSION**

The Court **DENIES** Zapata's Motion for Partial Summary Judgment. Significant fact questions remain regarding State Defendant's liability for each of his constitutional claims.

The Court **DENIES** summary judgment to State Defendants on the issues of judicial immunity and qualified immunity. State Defendants have not demonstrated that they, as individuals, were to perform a "function essential to the judicial process," and the law regarding delays in competency evaluations for pretrial detainees proved reasonably clear at the time of Zapata's 577 wait for an evaluation.

The Court **DENIES** summary judgment to State Defendants on the issue of exhaustion of remedies under the MHRA. The MHRA does not require Zapata to file a complaint with the Human Rights Commission before pursuing his Article II, Section 4 claim in this Court. The Court **GRANTS** summary judgment to State Defendants, however, on the issue of adequate, alternate remedies for Zapata's alleged constitutional violations. Zapata has not demonstrated that his negligence claim would not provide an adequate remedy for the damage arising from State Defendants' alleged violations of the Montana state constitution.

The Court will defer its rulings on the parties' Motions in Limine.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1.  Zapata's Motion for Partial Summary Judgment (Doc. 53) is **DENIED**.

2.  State Defendants' Motion for Partial Summary Judgment (Doc. 57) is

    **GRANTED IN PART** as to Zapata's Montana state constitutional

    claims. State Defendants' Motion (Doc. 57) is otherwise **DENIED**.

3.  The Court reserves its ruling on the Zapata's and State Defendants'

    Motions in Limine. (Doc. 73); (Doc. 76.)

Dated this 3rd day of March, 2023.

Brian Morris, Chief District Judge
United States District Court